On our docket today is agenda number 5, number 130919, People of the State of Illinois v. Courtney Vesey. Counsel for the appellant, are you prepared for CA? Good morning, your honors. Good morning, counsel. May it please the court, I'm Elliot Borchardt with the Office of the State Appellate Defender. Today I have the honor and privilege of representing the defendant, Appellant Courtney Vesey, in this matter. The evidence at this case established that to effect an arrest on Mr. Vesey, in a matter of two seconds, officer in training, Brett Taylor, without telling Vesey he was under arrest, or anything for that matter, without giving him an opportunity to peacefully submit to an arrest, dangerously tackled Courtney Vesey over a concrete retaining wall, considering that Mr. Vesey was unarmed, and with Mr. Vesey's head and body exposed and unprotected. The jury did not even have an opportunity to consider whether Vesey's action of wrapping his arms around Taylor's neck was self-defense. Now I'll get into the reasons why here in just a little bit, but there is slight evidence that Officer Taylor used excessive force. And the case law establishes that when an officer uses excessive force, it invokes the arrestee's right to use self-defense. And it really makes sense why. When we are looking at the evidence in the light most favorable to the defendant, when there is evidence of excessive force, there is necessarily slight evidence of the six elements of self-defense. After all, for example, when the police are using excessive force, there is slight evidence of unlawful force. The parties here are in agreement that excessive force is unlawful force. If an officer is using excessive force, he is naturally using force that violates the Constitution and that is inconsistent with Illinois law. But if the officer is using excessive force, there is also slight evidence that the defendant is not the aggressor. In cases in which the arrestee offers no resistance prior to the use of force, the use of excessive force is necessarily going to render the officer the aggressor. He is using more force than is reasonably necessary under the circumstances to effect an arrest, so he is naturally rendering himself the aggressor. But even in cases... May I ask you this? I'm confused about some standards here, and I'd like you to help me figure it out. We understand there are ideas about the reasonableness of the actions of the police officer, and then we have these other ideas about excessive force, the term that you've just been using. What I really don't understand is the relationship between those two ideas. Number one, I'm not sure I understand how we sort out what's reasonable or unreasonable and what's excessive and what's not. And then maybe more importantly, since we're talking here about instructions, how is that decided? You mentioned a minute ago about looking at the evidence in the light most favorable to the defendant. I'm not sure that's the standard for looking at instructions. So this is a call the trial judge is going to make, right, about what instructions are going to be given. So how do the ideas of unreasonableness and excessive force work or don't work with each other, and how does the trial court determine, after making that analysis, whether or not there is slight evidence in one or the other to give the instruction? Yes, Greg, to answer your first question, the reasonableness and the idea of excessive force are something that are tied together. Because under Illinois law, under Section 7-5, an officer is only allowed to use the force reasonably necessary to effect an arrest or to protect himself or another from bodily harm. That's what Illinois law says. So if the officer is using more force than is necessary to do those things, then he is outside the scope of Illinois law, and under Illinois law, his force is excessive. And the analysis under the U.S. Constitution and the Fourth Amendment is largely the same. The standards are largely the same as the U.S. Supreme Court recognized in Graham. So the analysis is largely similar. As to your second question, Your Honor, when the court is determining whether to give the instruction, this court's precedent for decades has been there has to be slight evidence of the six elements of self-defense to get the self-defense instruction. So the court is not supposed to be weighing the evidence or assessing the credibility of the evidence. It is really just looking for slight evidence, which is a low bar to clear. It's not proof beyond a reasonable doubt because the jury is ultimately the fact finder here and gets to make the decisions. It just needs slight evidence, so that way the jury has the opportunity to make that decision consistent with the constitutional right to present an offense. Counsel? Let me just finish. Slight evidence of unreasonable force? Is that the same ideas, right? Unreasonable force and excessive force? You said they're related. The cases seem to be breaking the two ideas out, and that's what I'm concerned about in terms of how trial judges actually understand how to instruct the jury. So if the trial court is making a decision whether or not there is slight evidence that the force used was unreasonable, is that what the court should be looking at? Well, under this court's precedent, the court should be looking at whether there's slight evidence of the six elements of self-defense. We're not asking for anything different here. We are not asking this court to depart from its decades of precedent. What we are instead asking this court to recognize is that the use of excessive force is going to establish slight evidence of the six elements of self-defense. So does the trial court have to make a determination as to whether or not excessive force is used in deciding whether or not to offer the instruction? That is something that the trial court necessarily has to consider, yes, Your Honor, because excessive force is unlawful force, and unlawful force is one of the elements or unlawful force being threatened against the arrestee or the defendant is one of the elements of self-defense. So the first step is the trial court is determining whether or not the officer was reasonable in the amount of force that was used? I don't think it's necessarily a first step such as the way the Fourth District created the test here because if you look at the way the Fourth District created its test, it's looking at whether there's excessive force first and then the six elements of self-defense, but it really doesn't make sense to do that because excessive force is unlawful force. So we're necessarily looking at excessive force twice under those circumstances. So there's really no need to create these two different steps. So how and when do we determine whether or not there was excessive force? I mean, when does that come into play? It comes into play when the court is evaluating whether there is evidence of unlawful force. Aren't they the same ideas? Excessive force is unlawful force, yes. So it's just one idea. That's the first step. So, still your honor, excessive force is going to establish all the evidence or slight evidence of all the elements. It's necessarily going to, if there's excessive force used, it is necessarily going to establish the slight evidence of unlawful force because excessive force is unlawful force. But put yourself in the role of the trial judge. The trial judge has heard all the evidence and now we're at the instruction conference and we're deciding what instructions will be given. What should the trial court be considering and what's the process in determining whether or not to give a self-defense instruction if one was tendered by counsel for the defendant? Simply put, all the court needs to consider is whether there is evidence of excessive force because it establishes slight evidence of all the elements. So once the trial court determines that the officer was not reasonable in his conduct, that means excessive force and that constitutes slight evidence of all the six factors and we're looking at the instruction being given. Yes, your honor. Because if we step back and take a look at what is inherent with excessive force, we have police officers who are heavily armed, they often outnumber an arrestee, and they are using excessive force under color of law and at least with the appearance of the imprimatur of government. So necessarily when we're talking about excessive force, there is an unequal balance of power here. There is an inherent power imbalance. And I think this is something that allows us to draw inferences with regards to the six self-defense elements that we might not necessarily be able to make in citizen versus citizen encounters. Thank you. Did the trial judge determine in this case that it wasn't excessive force? Did the trial judge make that determination? Well, I think what the trial judge here did was problematic because the trial judge was finding facts rather than applying the slight evidence test. The trial court was saying things such as it could not deem Taylor's forces unlawful or that... But doesn't that mean that he found there wasn't excessive force? I mean, what you just said is the exact definition that you gave a minute or two ago as excessive force. But the problem with the trial court's reasoning here is that it did not apply the slight evidence test. Using the word deed, that is conclusive in nature. That is fact-finding. Courts aren't supposed to be doing that at the instructional stage. That's something that is the jury's responsibility. Instead, it needs to apply the slight evidence standard. So ultimately, the jury is going to determine whether or not excessive force was used and whether or not the defendant acted in self-defense in the actions that he or she took. That is correct, Your Honor. That is the jury's role. The trial court's role is just to determine whether there is slight evidence. What does 7.5 require the court to do in making a determination about whether or not the officer has acted appropriately in a situation like this? Well, there are really two sections of 7-5 that apply when we're evaluating an officer's use of force. One of them we consider whether, from a really objective standpoint, what a reasonable officer would have done under the circumstances that the officer actually in the situation faced. The other part is we have to recognize that the use of force is a serious responsibility and the authority to use it is a serious responsibility and that we have to recognize the great consequences that come with the use of force such that we can ensure that an officer's use of force is lawful. At the time the officer acted, was he trying to place Mr. Vesey under arrest? That was his testimony, but Mr. Vesey was not aware of that. Taylor did not tell Vesey that he was under arrest. This is something that happened in two seconds, so I doubt that he would be able to comprehend what was even happening until he was on the ground. Now, we have a video of what took place. Isn't a trial court judge supposed to assess all that evidence in order to determine whether or not Mr. Vesey would be entitled to that self-defense instruction? Correct. And actually, I think the video in this case is extremely important and is something that has to be watched. I mean, it tells us exactly what happened. Videos don't lie. It's going to show us exactly what happened. Now, how does the trial court judge view that video? How much evidence does Mr. Vesey have to present? It's just some evidence, right? Correct. Slight evidence, yes. In your view, does the video constitute some evidence? Yes, Your Honor. I will go through the six elements of self-defense here, but before I get into that, there are a couple of preliminary points I want to make. Part of it is about the video. I really think, again, it is absolutely imperative to view this video because it shows what happens. And I think just relying on the images that are included in the briefs, it's not going to capture what happens. The only thing that captures what happens in the context of what happens is the video. And along those same lines, the State, I know, presented slowed-down versions of the video at trial, and it's well within its rights to do so to try to meet its burden. But in reality, Mr. Vesey only had two seconds to respond here. Only two seconds passed between the time that Taylor took his first step towards Vesey and the time that Vesey was on the other side of this wall. And lastly, before I get to the elements, when I talk about the tackle, what I'm talking about is Taylor's first step towards Vesey and everything that follows. And I think that's a reasonable conclusion because if we watch the video, it is clear that Taylor was intending on taking Vesey over this wall from the get-go. And he also testified that as soon as he decided to make the arrest, he was going to get, quote, hands-on, and that he intended to take Vesey over the wall. Or this is just two seconds. I mean, it happens so quickly, viewing the video. This was a very volatile situation. Obviously, Mr. Vesey was having some mental health crisis, talking about serpents coming out of his closet and all those kind of things. And he was with his daughter. The mother had called the police because she was concerned about the safety of her child when it was clear that her father was having this event, this mental health crisis. The police come up, and for a very long time, they spent a lot of time talking with him and trying to diffuse the situation. Would you agree on all that? Yes. And then Mr. Vesey, clearly what the police officers are trying to do is separate Mr. Vesey from the child. In fact, they say, you know, her mother's going to take her away and we're going to call DCFS. They're trying to separate Mr. Vesey from the child because they're concerned about the child's welfare. Would you agree with that? Correct. Okay. And then at that moment, in this two seconds, Mr. Vesey starts to raise his voice, and he starts to move forward, correct? That is correct. And then the police officers touch him, correct? Correct. All right. So the question here for the trial judge was, in that second, two seconds, was that unreasonable force, correct? That's the question? That is correct. Okay. And certainly a jury could find that one way or another. That is correct, but there only needs to be slight evidence to get the instruction, which is a low threshold to clear. Okay. So that's the question. If after looking at the video, which I had a couple of times, is that moment, that very moment when Mr. Vesey and the police officers are trying to move the daughter away for her own protection, and Mr. Vesey comes forward and starts raising his voice, in that moment, did the officers act unreasonably? And you would say that is slight evidence of the officers acting unreasonably. Yes, ma'am. I also think we have to keep in mind that the use of force here was to effect an arrest. That is what Taylor testified to. So when we are evaluating whether the use of force was excessive, we have to evaluate whether it was excessive in light of whether it was necessary to effect the arrest specifically. Do we have to look into, in terms of this idea of unreasonable ones, do we have to look into the mind of the police officer, or are we just looking at what the video shows us? Well, the standard is an objective standard, and the video is going to tell us what happened, but I also think it demonstrates what a reasonable officer would have done, because we have two additional officers here. We have Sergeant Kuhlman, who is a sergeant, and we have Officer Guerrero, who is a field training officer. So these are two officers in a supervisory role. They presumably have years of experience, and I think Kuhlman actually testified he has 15 or 16 years of experience. But they weren't the ones who tackled Vesey. Taylor did. So I think that tells us everything we need to know about whether there was a use of excessive force here, is that the two officers who have years of experience were not the ones who made the tackle. How much experience did Taylor have? Taylor was an officer in training. I believe he testified that at the time of this incident, he had only been an officer for six months, and I believe part of that would have included his 14-week academy training. And prior to the tackle, a different officer put his hand on your client, and your client brushed that hand away, and then he was immediately tackled by Taylor, correct? Correct. But I believe that brushing away, regardless of whether we're going to – we could assume that Kuhlman's action was justified here. But even assuming that, Vesey's action was still defensive. He didn't take an aggressive move such as punching Kuhlman, and he also said, get your hands off me. He did not re-approach Kuhlman. He did not attempt to make contact with Kuhlman again. He unarmed the individual, and the police knew that. And he was not even warned he was under arrest, that or anything. And a tackle over a wall is an inherently dangerous action. Mr. Vesey could have been seriously injured here. I mean, he could have landed on his head. He could have landed on his back. And I think the fact that he wasn't injured here is nothing short of a miracle, and, in fact, probably was because he was able to wrap his arms around Taylor's neck and put his legs around his body to brace himself for the fall. So the very fact that he did take action is the thing that protected himself. So for these reasons, I do think there is evidence of excessive force here. Again, it is a slight standard. And the fact that it's even up for debate and that we could have a debate about this here today and that there was a dissent below, I think that tells us this is something that should have gone to the jury. It is ultimately the jury's job to determine the six elements of self-defense and whether this data has disproved them beyond a reasonable doubt and, as part of that, whether there was the use of excessive force here. I do want to address the subjective belief here and whether Vesey held that belief. And not only do I think there is slight evidence of that, but I believe there is substantial evidence. If you look at the video, Vesey, he's got a terrified look on his face as he's going over this wall. He also, as I mentioned, has his legs wrapped around Taylor's body, so he's in an inherently defensive position here bracing himself for the fall. I do recognize my time is up, and I'll save the rest for rebuttal. Thank you very much, Counsel. Counsel for the plea. Good morning. May it please the Court. Counsel. I'm Assistant Attorney General Josh Schneider on behalf of the people of the state of Illinois, and I would like to start with Justice Holder White's question about what is it that a trial judge needs to consider when determining whether to give a self-defense instruction because the legal question before the Court this morning is, when a defendant is charged for his use of force against an arresting officer, which of the six elements of self-defense does a court have to consider to determine whether to give that instruction? Is it all six or is it only one? And I think we need to start there because only when we've determined what does the Court need to consider to give an instruction or to determine whether to give an instruction can we determine whether the Court abuses discretion in this case by finding insufficient record support. Now, the parties agree that it is black-letter law in Illinois. There are six necessary elements of self-defense, and if a defendant who has been charged for his use of force against another person cannot point to at least some slight evidence of each of those six elements in the record, he is not entitled to self-defense instruction. And the parties also agree on what those six elements are. Three of them focus on the other person's actions, and three focus on the defendant's actions. So the three that focus on the other person's actions, the other person has to have threatened force. That threatened force has to have been unlawful force, so if the other person is an arresting officer, that means under Section 7-5 that they were threatening excessive force, because an arresting officer's use of force is only unlawful if it's excessive. And then, finally, that threatened unlawful force has to have been imminent. And then we turn to the other three elements, the three that turn on the defendant's actions. The defendant has to have actually believed that the force he was using was necessary to defend himself against harm. That belief has to have been objectively reasonable. And he also can't have been the initial aggressor, the person who sort of takes the fight in the first place. And so as this Court has explained in cases like Everett and Jeffries and Bradshaw, to determine whether a defendant in a case is entitled to a self-defense instruction, the Court has to look at the record and say, is there some evidence of all six of these elements? A defendant argues today that if the other person is an arresting officer, then you don't look at all the elements. You look at one of the elements. And that one element necessarily satisfies all the others. And the one element he's identified is the unnecessary force element. If there's some evidence, or I'm sorry, unlawful force. If there is some evidence that the arresting officer used unlawful force, excessive force, then that necessarily is slight evidence of all of the other elements. And that's simply not true. And we can see that it's not true by walking very quickly through a very simple hypothetical. In this hypothetical, I am being arrested. The officer is putting me under arrest, and I'm refusing to give him my hands to handcuff me. And rather than yank on my arm, which would be a reasonable effort to make the arrest, or perhaps take me to the ground so he has more control over my body to get my arms, the officer just punches me in the face. That is at least some evidence of excessive force. In your hypothetical, do you know you're being placed under arrest? Sure. So in my hypothetical, I do know. He says, you're under arrest. And I go, I'm not going to give you my hands. And rather than do something to get my hands, he punches me in the face. In that circumstance, we have some evidence of excessive force. That punch was not necessary to protect the officer. He could not reasonably believe the punch was necessary to protect his safety or the safety of someone else while arresting me. And nor was that reasonably necessary to make the arrest, because, of course, you can't punch someone into being in custody. So we've got some evidence of excessive force. If that was all we knew and we asked the trial judge, is Josh Schneider entitled to a self-defense instruction, the trial court would have to say, I don't know. I don't have enough information because I have no idea what Mr. Schneider's actions were. I don't know the information I need about those three elements of the six necessary elements. And I don't know about the relationship between my actions and the officer's actions. And so here are three very quick examples of why that exact scenario would not require, necessarily in all cases, a self-defense instruction. One is the officer punches me while trying to get my hands. And my response is to draw a knife and repeatedly stab the officer. In that case, I would not be entitled to self-defense instruction because it is not even arguable. There's no slight evidence that I could have reasonably believed that my use of lethal force was necessary to defend myself against that punch. The second is I have a more proportionate response. The officer punches me, excessive force, and my response is to punch the officer back. But I punch that officer back 20 minutes later when we're back at the station. I'm now uncuffed and being fingerprinted. The officer walks by and I punch him. There is not even slight evidence that I could have reasonably believed that that punch 20 minutes after the unlawful force, the unreasonable excessive force, that that was necessary to defend myself against that punch 20 minutes earlier. So I would not be entitled to self-defense instruction in that case. And finally, let's say that I have a proportionate response and I have a timely response. The officer punches me and I immediately punch the officer back. But I testify at my trial that the reason that I punched the officer was to teach him a lesson. No one lays a hand on me. As this court explained at Everett, self-defense requires that the person have been acting to defend themselves, not to defend their pride. So if I was punching the officer to make a point rather than because I actually felt it was necessary to defend myself from harm, then I would not be entitled to self-defense instruction in that scenario. And so what we see here is that only knowing that there's evidence in the officer's use of excessive force just does not tell us enough to know whether a defendant in a particular case is entitled to a self-defense instruction. And so it is a bad test. The one element test is a test that does not give us the information we need, which is why this court doesn't apply that test. If you look at this court's precedent in Everett and in Bradshaw, the same test that applies for any instructional question. You look at the elements that are required to have some evidentiary support for that instruction. Did we act well in that case? And you ask, is there some slight evidence of each of the necessary elements? And if there is, then you give it. And if there isn't, then you don't. So the question for the court today is whether there was some slight evidence of all six of the elements, and specifically whether the trial court abused its discretion in finding that there was not some slight evidence, because of course it's not de novo review. And as we've explained in our brief, we believe that the trial court did not abuse its discretion. There was a failure to prove or not prove, I beg your pardon, a failure to establish some slight evidence of a number of the elements. And I'll start with the easiest one. The easiest one is whether the defendant, or two rather, whether the defendant actually and reasonably believed that the force he used against Officer Taylor was necessary to defend himself against imminent harm. Now, defendant has pointed to the two seconds between when Officer Taylor first touches him and when they're over the wall. And I'd like to focus on the following eight seconds, when they are now lying on the ground. The defendant was lying on his back. Officer Taylor was on top of him with both hands flat on the ground trying to get up. And defendant had his arm tightly clutched in two arms. And he held on for eight seconds while two other officers, with sufficient force, that it required two other officers eight seconds of concerted effort to pry him loose. And the question is, since he was charged, of course, with wrapping his arms around Taylor's neck, whether there was a slight evidence that that eight seconds of Taylor in a headlock, first with two arms, then when one was pried off with one arm until he got the other arm off, whether there was any evidence that that could have been reasonably necessary. He could have reasonably believed that was necessary to defend himself against harm rather than that he was now just fighting the officer for whatever reasons he might have had. And the trial court certainly did not abuse this expression. It was not fanciful or arbitrary to conclude on the record before it that there was simply not enough evidence to meet even the low evidentiary burden required to issue an instruction for that element. There was no evidence that defendant subjectively believed, that he actually believed, that when they're on the ground and now he's just not letting Officer Taylor get up, that that was necessary to defend himself. And the court, again, did not abuse this expression. It was not arbitrary or fanciful or objectively unreasonable for the trial court to say, on this record, I just don't see any evidence to support that, and so I can't give the jury an instruction on self-defense. Because each, as this court explained to Jeffries, each of those six elements is indispensable. If there is a lack of evidence supporting one of the elements, then self-defense instruction is simply not applicable. And it is ‑‑ So could a trial court judge assess these six elements by looking at the video? Yes. The court had to, in fact. I notice that you talk about what happened after they were on the ground. Your opponent talks about what happened before they reached the ground. That's right. You don't deny that Officer Taylor grabbed Mr. Vesey and pushed him over the wall, do you? I'll say no. Wait, Officer Taylor did not do that? He absolutely ‑‑ he pushed him, and then in that second, they're over the wall. So the way I saw the video, and I absolutely agree, that it is not an easy call for those two seconds. It is bang, bang. And you can slow it down, and depending on which frame you take, it gives you a different impression. But let's talk about the call. By the trial judge making the call in this case, isn't he invading the province of the jury? No, Your Honor, because the trial judge's job is to determine whether there is some evidence, right? And that video doesn't constitute some evidence. So ‑‑ Just answer that question. Does the video constitute some evidence? De novo, quite possibly. But the problem is, and I want to address this point, because ‑‑ Counsel, you haven't answered my question. Does the video constitute some evidence? We aren't talking about the standard. Is it some evidence? If I'm the judge, yes. I would say, well, I think that's some evidence that that first push might have been unwarranted. But that's my personal view. And, of course, we are reviewing this ‑‑ I'm sorry, we. This Court is reviewing this as a court of review under the Abuse of Discretion Standard. And so the question is, I believe as counsel put it, well, the fact that we're having an argument about it necessarily means that there was sufficient evidence. That's not how it works on Abuse of Discretion Review. The fact that something is debatable doesn't mean that it was necessarily an abuse of discretion, because abuse of discretion is a deferential standard. We recognize that it's a two‑second piece of video or that there was, you know, some ambiguous testimony, and the court has to make determination about whether this evidentiary burden has been met. And we say, as long as it's not objectively unreasonable, as long as it's not arbitrary or fanciful, we're going to defer to the trial judge's adjudication of whether the evidentiary minimum was met for a particular instruction. So whether I personally, if I was a judge, and thank goodness I'm not a judge, whether I personally would have thought that this was sufficient is really irrelevant, because the fact is that the trial judge here believed that it was insufficient, and we have to review that through the abuse of discretion lens. But I would note, as ‑‑ When I'm asking whether it was sufficient, I ask if it constituted some evidence. That's what I meant. Is it sufficient to meet the evidentiary burden or not? Yeah, the evidentiary burden. You have to establish some evidence. So was it sufficient to meet that burden? And that's the question that we review for abuse of discretion. I'd like to also take a moment to address your point about there being the two seconds and the eight seconds. And regardless of whether the initial seconds were some evidence, that was not entirely what he was charged with, because he was also charged with having his arms around the officer's neck. There's also the eight seconds. So there's simply no evidence, and I don't believe the defendant has put forth any argument in his reply, that that eight seconds of quite strong force, again, it took two officers eight seconds to pry him loose, that that was even arguably that he subjectively and reasonably believed that that exercise of force was necessary. But because the defendant didn't testify to anything about, you know, what happened, including he didn't say, I was agitated, I was mad, I was this, how is it that the judge could make any determination about his subjective? The judge doesn't have to make a determination. The judge just looks at the record and says, is there support in the record? And as your Honor noted, he didn't testify. So in some cases, when someone's going to make a self-defense defense or assert self-defense, it will be very helpful for them to testify to their subjective experience, because that will provide some basis for that subjective belief. It's not necessary belief. Without that, though, how does the judge make a determination that there is, you know, no evidence, however slight, of his subjective belief? So the court needs to look at the record and look at the circumstances in which force was used by one party and the other, and the relationship between those two uses of force, and determine, is there some slight evidence? Is there something here, let's infer, a reasonable jury to infer that this defendant actually believed that when he was punching this other person or kicking this other person or whatever he was doing, that he was doing this out of self-defense? And sometimes there won't be. Could a reasonable person think, well, he's holding on to the officer because he's just been jumped and basically put over a wall without any announcement of, I'm being arrested or anything like that, and so is he holding on to the person, thinking, I need to continue to hold on to the person so that something else isn't done to me? So our position would be no. Or at least there's not a sufficient basis for that inference to have met the low evidentiary burden. But I do want to take a moment to say that whichever way the court were ultimately to decide whether there was or was not sufficient evidence, the standard we'd like the court to make clear is whether all six elements were satisfied, not this sort of one-element shortcut that simply does not reliably give us the right answer. But the question of whether there was unlawful force in the first instance, the court also did not unreasonably, arbitrarily, fancifully resolve that question. Taylor comes forward and he pushes defendant. Do you see under what you're asking us that the determination about whether the force was or was not reasonable as part of the six elements or an initial finding? It is part of the six elements, but there is a pragmatic reason why I think courts typically address it initially in cases involving officers' uses of force. So excessive force in the context of someone using force against an arresting officer is indistinguishable from the unlawful force element because an officer's use of force during an arrest to make an arrest is not unlawful unless it's excessive. So it is just a normal six-element consideration. But one of the reasons I think that it is usually addressed first as sort of a threshold is that frequently it will be the element that is the hardest for a defendant to establish the evidentiary minimum for. And part of the reason for that is that under Section 7-5 it is, as the defendant pointed out, it is the reasonable officer standard. And so it is certainly true that under 7-5e we consider the reasonableness of the use of force with an eye or keeping in mind the potentially serious consequences of an officer's use of force against someone. Under 7-5f we also evaluate the decision to use force by an arresting officer with an eye on the fact that those decisions often have to be made under very trying circumstances under very short periods of time. And so you're specifically referring to the fact that his officer was in a situation where he sees the defendant react physically to his partner, one of the other officers, putting his hand on him to stop him from moving forward. And so the officer doesn't really know what might happen next and so decides to act. That's exactly right. And the reasonable officer standard is not the perfect officer standard. So if we think of it as sort of roughly analogous to reasonable counsel in the Strickland context, there is a band of reasonable action. It is not that there is only one right answer in every situation. There is a band of reasonable conduct and then beyond that there is unreasonable conduct. I would probably like to address, well, perhaps not finally, but towards the end, I'd like to address an argument in the briefs that the reason that we need to instruct juries on self-defense whenever there's evidence of excessive force, sort of regardless of consideration of the other elements of self-defense, is that it's important to protect the public against misconduct by the police. And that is simply not what jury instructions are for. The fundamental purpose of a jury instruction is to instruct the jury correctly on the applicable law in a particular case. To the extent that the defendant's concern is that the legislature has not enacted sufficiently protective self-defense standards or consequences for police misconduct or that prosecutors are not appropriately prosecuting police misconduct, those are policy questions directed at those branches. They cannot be addressed through jury instructions. Those are a very limited tool there for the very limited purpose of instructing the jury on the applicable law. And here, if the jury had been given the jury instruction, 24-25.06, the use of force in defense of a person, they would not have been instructed. He would have acted in self-defense if the officer used excessive force. They would have been instructed on all of the elements of self-defense, and that the state had to disprove all of those elements, not just that the officer used excessive force, which is why we know that excessive force alone is not actually the question. It's all six elements. And here, the trial court did not abuse its discretion by finding that there was insufficient evidence to establish the low but real evidentiary burden to establish each of those six elements. So if there are no further questions, we'd ask that the court affirm the judgment. Thank you. Thank you very much, counsel. Counsel, in reply. Good morning again. Just to start off here, I just want to ask, what is Mr. Vesey supposed to do here? He's tackled over a wall in two seconds without being told he's under arrest, without giving any warning. What is he supposed to do? This is a dangerous situation here. Is he supposed to just let it happen and potentially break his back and break his neck and potentially even suffer a fatal wound here? I mean, this was a dangerous action. I mean, this is not a closing argument before the jury. I mean, I could hear the State saying, what is he to do? Why is he putting his arm around and choking the police officer, perhaps deadly force on the police officer? I mean, that's not what we're here to debate, whether or not ultimately there is proof beyond a reasonable doubt here or not. That's a different place. We're here just to talk about, I think, what the first issue to struggle with is exactly what should the trial judge do? How does the trial judge analyze the evidence presented to the court to determine which jury instruction should be given? That's what we're here to talk about. And I agree, Your Honor, but it also necessarily informs as to whether there was slight evidence here. And we have to necessarily consider that was the force used against him in analyzing that. And I also would note that the State just a couple of minutes ago indicated that at least the initial push here was unwarranted. So the State is conceding that there was excessive force used here. And I would also note that this was not just a push. This was a tackle. Even Taylor testified that he tackled Vessi over the concrete retaining wall. So this was not just a –  It's a real ambiguous situation when you watch the video, right? I mean, the officers are trying to separate him from his daughter. He's speaking very, you know, deeply mentally ill things he's saying. The officers are called there to protect the child because the mother is concerned for the safety of the child who's in the custody of this very sick man. The officers come. They're trying to now separate the child away to her mother so that – to protect her. And Mr. Vessi starts to change the way he's dealing with the police officers. Do you agree with that? His voice becomes – he starts to move toward them. This is a – you know, it's a very difficult situation for everybody involved. This is not just the police officers coming and pushing him over the wall. Correct? But that's necessarily what happened here, and that was done to effect the arrest. Yes, I understand that, you know, they're concerned about Vessi's mental health and the impact that that could have on the daughter. But still, just to see – But what if he moved toward the daughter? And I – maybe one might interpret the video that he was moving toward the daughter. When the police officers are trying to separate the daughter away from him, to protect her from him, and say to him, she's going to – your daughter's now going to go with the mom, and that's when he becomes – his demeanor changes. What if he looked at that video and saw that he was in some way moving toward her, in some way threatening her? What were the police officers supposed to do then? Well, ultimately, those aren't the facts of this case. Is it or not? I can't tell from looking at the video. I personally don't believe it is the facts of this case. Ultimately, what happened here is that there was a use of force to effect the arrest, not to protect the daughter and the mother. They were already walking away by the time any hands or any contact was being made. Again – Counsel, at the time this incident took place, wasn't the daughter sitting with the mother on a bench? They were sitting on the wall, but by the time – How far away was the daughter from the father? The daughter was behind the police officers. The police officers were serving as a barrier, but they were, I will admit, maybe a few feet behind the officers. However, by the time things got physical, they were getting up and walking away, so they were already distancing themselves from the situation. Who was getting up? The defendant was unarmed. Had he been checked? He had. Yeah, they checked him. When the police officers initially arrived, they patted him down. They determined that he had no weapons on him. That is correct, Your Honor. And he permitted them to pat him down? Correct. He was cooperative. And Taylor even testified at trial that after Bessie had made these concerning comments, that he had calmed down. So the situation had de-escalated. What escalated the situation – and yes, Bessie, he was upset. I mean, I think that's clear in the video, and I'm not going to stand before this court and deny that. However, what escalated the situation instead of de-escalating the situation, especially involving someone with mental health issues where we need to use delicate hands, is tackling him over the concrete retaining wall. That was an inherently dangerous action that could have subjected Bessie to significant harm. I know, Your Honor, Justice O'Brien had asked a question about the subjective belief and with regards to whether there's testimony to establish that or not. But the defense can rely on state evidence to establish the slight evidence of self-defense. And I do think the body cam footage, as I mentioned previously, does at least establish slight evidence of the subjective fear that Mr. Bessie held. Because, again, looking at his face going over the wall, he looks terrified. And he's also in this inherent defensive position, bracing himself to go over the wall. I think that establishes slight evidence. And again, we're not looking for evidence beyond a reasonable doubt here. It's just slight evidence. And I do believe, based on the video, it is actually more than slight evidence here. Your Honor, what about the standard of review, abuse of discretion? I mean, that's a difficult hurdle to get over. It is an abuse of discretion. But this court has also held, I believe in Jones back in the 90s, that if there is slight evidence of self-defense and the court does not give the instruction, that is abuse of discretion. So, Your Honor, the slight evidence standard is a low bar to clear. That low threshold was satisfied in this case. The trial court thus erred in not giving the instruction. And this court should reverse the judgment of the trial court and the appellate courts and remand for a new trial. Thank you. Thank you so much for your arguments. Both sides of this case. Agenda number 5, number 130919, People of the State of Illinois v. Court of Investigation, will be taken under this bill. Thank you very much.